UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES T. DUNHAM, SR.,

    Plaintiff,

v.                                          Case No. 22-cv-1033

MICHAEL WILLMANN, *et al.*,

    Defendants.

## ORDER

Plaintiff James T. Dunham, Sr., who is currently incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. (ECF No. 10.) Dunham was allowed to proceed on Sixth Amendment and Fourteenth Amendment claims against defendants Michael Willmann and Scott Smith for allegedly restricting Dunham's ability to call his lawyer. The parties filed cross-motions for summary judgment. (ECF No. 67, 68.) The motions are fully briefed and ready for a decision. For the reasons stated below, the court grants the defendants' motion for summary judgment and denies Dunham's motion for summary judgment.

### FACTS

At all relevant times, Dunham was a pretrial detainee at the Dodge County Detention Facility (DCDF). (ECF No. 72, ¶ 2.) Willmann was a detective employed by DCDF, and Smith was the Jail Administrator. (*Id.*, ¶¶ 3-4.)

At some point, while investigating a theft potentially involving Dunham, Willmann listened to calls made by Dunham (while incarcerated) to Jonathan Prag on April 2, 2022, and April 3, 2022. (ECF No. 72, ¶¶ 21-23.) The defendants assert that on April 2, 2022, during a call between Dunham and Prag, Prag initiated a three-way call with Shyanne Holst. (*Id.*, ¶ 24.) Dunham denies that he participated in a three-way call with Holst and Prag. (ECF No. 86 at 1.) Willman states he heard Dunham tell Holst "not to say anything about his criminal cases" and to "stop talking to the cops". (ECF No. 72, ¶ 24.) He also heard Dunham try to convince Holst to "change her statement", and that the "bullshit restraining order needs to be done." (*Id.*) Dunham told Holst that she would be "cross-examined on the 12th", the date of Dunham's probation revocation hearing. (*Id.*)

Willmann next listened to a call between Dunham and Prag that took place on April 3, 2023, wherein Dunham asked Prag "to message Shyanne Holst, 'are you willing to make that change with the PO thing?'". (ECF No. 72, ¶ 25.) Dunham further told Prag "to make sure that Shyanne Holst knows she can't get charged for changing her story" and to message Holst telling her that she "should not play games" with Dunham. (*Id.*, ¶ 26.) Holst was a witness to the crimes that Willman was investigating Dunham for and also had a restraining order against Dunham that was issued on March 9, 2022. (*Id.*, ¶¶ 27, 30.)

Based on these calls, Willmann requested the Dodge County District Attorney to issue charges of intimidation of a witness and violation of a restraining order. (ECF No. 72, ¶¶ 29, 31.) Also because of these calls, Dunham's telephone privileges were

2

suspended on April 3, 2022. (*Id.*, ¶ 32.) Initially, the suspension was only for seven days, but it was extended twice, remaining in place until Dunham was released from DCDF. (*Id.*) Dunham was informed of his telephone restriction on April 8, 2022. (*Id.*, ¶ 33.)

The defendants state that once the phone restriction was put in place, jail staff "were instructed to assist James T. Dunham with making telephone calls to his attorneys. Staff would verify the telephone number being called was for an attorney, place the call and then hand the telephone to James T. Dunham and leave the room." (ECF No. 72, ¶ 37.) Dunham asserts that DCDF staff were not trained to do this until after July 11, 2022. (ECF No. 85 at 3.)

It is undisputed that Dunham spoke to his lawyers on the following dates after the restrictions were put in place: twice on April 6, 2022, April 8, 2022, May 2, 2022, May 10, 2022, June 6, 2022, July 13, 2022, July 15, 2022, July 28, 2022, August 25, 2022, August 30, 2022, September 9, 2022, September 13, 2022, September 15, 2022, September 21, 2022, September 23, 2022, and October 25, 2022. (ECF No. 72, ¶ 82; ECF No. 85 at 5.) It is also undisputed that Dunham called his lawyers with the assistance of DCDF staff on July 14, 2022, July 19, 2022, July 27, 2022, August 1, 2022, August 10, 2022, August 19, 2022, September 12, 2022, two times on September 14, 2022, September 16, 2022, September 9, 2022, September 23, 2022, September 28, 2022, October 3, 2022, two times on October 10, 2022, October 17, 2022, two times on October 20, 2022, two times on October 24, 2022 and six times on October 25, 2022. (ECF No. 72, ¶ 80; ECF No. 85 at 5.) Dunham also tried to use his PIN to make calls

3

to his lawyers via the restricted system "several times between June 20, 2022 and June 22, 2022," and did not seek the assistance of DCDF staff. (ECF No. 72, ¶ 79; ECF No. 85 at 5.) On May 18, 2022, Dunham wrote a letter to his lawyers requesting to speak with them, which was sent to the State Public Defenders' office. (ECF No. 72, ¶ 40; ECF No. 85 at 3.) It is further undisputed that on June 7, 2022, Dunham had another prisoner contact Dunham's sister to ask her to ask Dunham's lawyer to call him. (ECF No. 72, ¶ 47; ECF No. 85 at 3.)

The defendants assert that Dunham "did not make any requests to DCDF corrections staff to call his attorneys between April 8, 2022, and July 13, 2022." (ECF No. 72, ¶ 78.) Dunham disputes this, stating that between April 6, 2022 and June 29, 2022, he requested to make calls to his lawyers 21 times, but staff refused his request. (ECF No. 86 at 2-3.) He maintains that it wasn't until July 11, 2022, after a new policy was put in place and staff were trained on it that he was allowed to make calls to his lawyers with staff assistance. (ECF No. 85 at 4.)

The defendants state the prolonged phone restriction was necessary because of an ongoing criminal investigation and to protect Holst. (ECF No. 72, ¶¶ 12, 39, 42, 58, 70.) They also note that DCDF's Jail Handbook expressly notifies prisoner that the administration can restrict phone and tablet access "based on requests from law enforcement, the courts, or for any reason based upon the safety and security of the facility and the public." (*Id.*, ¶ 69.). The handbook also prohibits three-way calling and warns prisoners that failing to follow the rules will result in loss of privileges. (*Id.*, ¶¶ 70, 74.)

4

Dunham asserts that because of the phone restriction, he had to appear at an initial appearance on June 6, 2022 without an attorney. (ECF No. 86 at 4.) He also states that not being able to "regularly communicate with my attorney in the early stages of my criminal cases . . . did hinder the development of defense strategies, and deprived me of the advice of counsel concerning any actions and/or behavior to refrain from during my cases' pendency." (*Id.*) However, he does not describe how he was actually prevented from litigating his cases or otherwise prejudiced.

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be

5

of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Dunham claims that the phone restriction the defendants placed violated his Sixth and Fourteenth Amendment rights because it prevented him from accessing his lawyer and it was imposed as an impermissible punishment.

*The Sixth Amendment Claim*

"Restrictions on a detainee's telephone privileges that prevent[] him from contacting his attorney violate[s] the Sixth Amendment right to counsel." *Murphy v. Walker*, 51 F.3d 714, 718 (7th Cir. 1995) (citing *Tucker v. Randall*, 948 F.2d 388, 399-91 (7th Cir. 1991)). However, "state officials could avoid liability if they 'identify legitimate reasons, security or otherwise, for limiting [detainee's] access to a telephone.'" *Gill v. Teigen*, Case No. 23-cv-256-pp, 2024 WL 3518652 at *7 (E.D. Wis. July 24, 2024) (quoting *Murphy*, 51 F.3d at 718). A detainee's ability to call his lawyer, then, is not unlimited. *Id.* "'Denying a pre-trial detainee access to a telephone . . . would violate the constitution *in certain circumstances*.'" *Id.* (quoting *Tucker*, 948 F.2d at 390) (emphasis in original). Not allowing a detainee to communicate with his

6

lawyer *at all* would clearly be a Sixth Amendment violation. *Tucker*, 948 F.2d at 390. But the Sixth Amendment right is not automatically implicated where there is evidence of some communication between client and lawyer. *Id.* Additionally, to demonstrate a Sixth Amendment violation, a plaintiff must show "specific prejudice to pending or contemplated litigation." *Carter v. O'Sullivan*, 124 F.3d 203 at *2 (7th Cir. June 30, 1997) (unpublished) (citing *Antonelli v. Shaehan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). "Conclusory allegations of prejudice are insufficient." *Id.* (citing *Martin v. Davies*, 917 F.2d 336, 340 (7th Cir. 1990)).

It is undisputed that Dunham had regular access to his lawyers. Even taking the facts in a light most favorable to Dunham and assuming that between April 6, 2022, and June 29, 2022, his 21 requests to call his lawyers were denied because of the phone restriction, the undisputed evidence still shows that he communicated with his lawyers at least seven times during that period, including in person visits, phone calls, and written correspondence. While Dunham states that his inability to call his lawyers every single time he wanted to between April 6, 2022 and July 11, 2022, (when he states staff started assisting him in calling his lawyers) hindered the early stages of his criminal cases, he does not specifically describe how he was prejudiced. In fact, it is common that communication troubles in ongoing criminal cases can result in additional time being granted by the court, or other accommodations. Here, we are left to speculate. Thus, no reasonable factfinder could conclude that the phone restriction violated Dunham's Sixth Amendment rights.

*Fourteenth Amendment Claim*

Under the Due Process Clause of the Fourteenth Amendment, prisoners who have not been convicted of a crime cannot be punished. *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1977). Due process rights are not infringed when the imposition in question is reasonably related to a legitimate governmental purpose. *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir. 1998). Where telephone calls were monitored and other restrictions on prisoner phone calls were put in place, as long as prison officials had a legitimate governmental purpose, they did not violate the Constitution. *Id.* This includes security measures because "security is a vital concern in jails." *Id.*

While there is a question of fact as to whether Dunham participated in a three-way call with Holst and Prag, it is immaterial. Dunham does not dispute that he discussed Holst with Prag. (*See* ECF No. 85 at 2 where Dunham deems the paragraphs 1-27 of the defendants' proposed findings of fact as "accepted"). Also, DCDF had clear policies that explained the consequences of breaking the rules concerning phone and tablet privileges. There is no question of fact that Dunham broke those rules. Combined with the fact that Dunham was subsequently charged with intimidating a witness and violating a restraining order, putting phone restrictions on Dunham served a legitimate governmental purpose. As such, no reasonable factfinder could conclude that phone restrictions violated Dunham's due process rights.

Because no reasonable factfinder could conclude that Dunham's Sixth Amendment or Fourteenth Amendment rights were violated, summary judgment is granted in favor of the defendants.

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment and denies Dunham's motion for summary judgment. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 68) is **GRANTED**.

**IT IS FURTHER ORDERED** that Dunham's motion for summary judgment (ECF No. 67) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment

9

under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 21st day of February, 2025.

STEPHEN DRIES
United States Magistrate Judge